■ WALTER McNORTON, Respondent, v BRONX PSYCHIATRIC CENTER, Appellant.—Order of the Supreme Court, Bronx County (Anita Florio, J.), entered on September 14, 1987, which revoked the settlement stipulation of the parties, rein-

stated the original charges against petitioner and directed the parties to proceed to arbitration, is unanimously reversed on the law and the matter remanded for a hearing, without costs or disbursements.

In August of 1985, petitioner Walter McNorton, a security guard at respondent Bronx Psychiatric Center, was served with a notice of disciplinary charges relating to a poor time and attendance record. Although the penalty proposed to be assessed against petitioner was termination, the matter was settled on September 25, 1985 pursuant to a stipulation providing that:

"In settlement of the Notice of Discipline dated August 6, 1985, the grievant, Mr. McNorton, his Council 82 representatives and the Bronx Psychiatric Center management agree that grievant be suspended from duty without pay for 4 weeks effective October 9, 1985, Close of Business through November 6, 1985, Close of Business.

"On his return to duty on November 7, 1985, Mr. McNorton will be terminated without further recourse to Article 8 of the Security Service Unit Agreement or any provision or contract, law, rules or regulations. However, this termination will be held in abeyance for up to a maximum of two (2) years (November 6, 1987) and will not be implemented unless and until Mr. McNorton fails at anytime to meet the conditions of the Chief Safety & Security Officer II as they relates [sic] to Time and Attendance in the Safety Department."

Petitioner returned to work at the Bronx Psychiatric Center, but, following 11 additional unscheduled or unauthorized absences between January 25, 1986 and April 23, 1986, he was terminated from his employment. Petitioner thereafter commenced this proceeding pursuant to CPLR article 78, contending that he was not mentally competent to enter into the stipulation and that, moreover, he had a stroke in late January of 1986, and because he returned to work too early, he suffered a relapse and was compelled to be absent from his job during part of April of 1986. In that regard, petitioner attached a letter from Stephen S. Teich, M.D., who had examined him on May 22, 1986. According to Dr. Teich, petitioner perceived that he had no option but to sign the settlement or be fired, that he demonstrated an inability properly to evaluate the severity and nature of his physical and emotional disease and went back to work before he was ready and able to perform. Dr. Teich diagnosed alcohol dependence, adjustment disorder with mixed disturbance of emotions and con-

duct, cerebrovascular accident with physical handicap and possible mental sequelae and certain extreme psychosocial stressors.

In opposition to the petition, respondent submitted an affidavit of Horace VonEeden, personnel director of Bronx Psychiatric Center, who stated that he was present when petitioner signed the agreement on September 25, 1985, that petitioner was in the company of two union representatives who explained the document to him and that he acted rationally in signing it. VonEeden further asserted that the Bronx Psychiatric Center had no record of having ever been informed that petitioner had had a stroke, and respondent also had no reason to believe that petitioner was mentally ill when he entered into the subject stipulation. Respondent also included an affidavit from Francine Cournos, M.D., a board-certified psychiatrist who, based upon her evaluation of Dr. Teich's letter, offered the opinion that since Dr. Teich did not meet with petitioner until some 8½ months after the execution of the stipulation, "[i]t would not have been possible for Dr. Teich to have retrospectively made an accurate assessment of Mr. McNorton's competence at the time he signed the agreement. * * * A description of the fact that Mr. McNorton had psychological motivation for his behavior, and that he felt coerced into signing an agreement do not demonstrate that he was not competent to sign."

In his reply affirmation, petitioner urged that notwithstanding respondent's claim of ignorance concerning his medical condition, it did, in fact, have notice that his absences in early 1986 were stroke related. Petitioner contended that "[e]ssentially, respondent is attempting to fire petitioner for not reporting to work while suffering the sequellae of a stroke, and for not calling in regularly to excuse his absence while in that disabled condition." He proceeded to note that "although respondent claims to have no knowledge of petitioner's condition, petitioner was absent from work during the period in late February and early March when he was hospitalized for a stroke, and apparently this absence was excused by respondent. The letter from Saint Mary's Hospital explaining this absence is quite explicit in describing the medical condition which caused it." Petitioner, moreover, stated that if respondent, a psychiatric institution, "was unaware of petitioner's condition, it is only because respondent chose to turn a blind eye to the obvious manifestations of that condition" since respondent was admittedly cognizant that "petitioner, who had been employed steadily by respondent for a period of nine

years, was slipping into a pattern of lateness and absenteeism often associated with alcoholism." Attached to his affirmation in reply was documentary evidence of his assertions, including notes from the Brooklyn Medical Group and another letter from Dr. Teich again reiterating his view that when petitioner signed the stipulation, he lacked the capacity to make a knowing and rational decision as the result of:

"a) unresolved grief and depression which affected his objective cognitive and emotional capacities,

"b) psychological compulsion, as he viewed the signing as the only way he could prevent and/or challenge his termination,

"c) inability to recognize and evaluate the role his disease of alcoholism played in his job difficulties,

"d) inability to recognize and evaluate his physiological illness, and its potentially on-going nature, and

"e) inability to recognize and evaluate the 'workaholic' compulsion to continue despite his limitations."

Respondent thereafter served surreply papers disputing some of petitioner's allegations. Based on the foregoing evidence, the Supreme Court revoked the stipulation of September 25, 1985, reinstated the charges originally brought against petitioner and directed the parties to proceed with the arbitration of these charges. While the court did not offer any reasons for revoking the settlement, it presumably made this determination in the belief that petitioner was not mentally competent to enter into the agreement *(see, Ortelere v Teachers' Retirement Bd.,* 25 NY2d 196; *Blatt v Manhattan Med. Group,* 131 AD2d 48). However, the parties herein have submitted papers containing conflicting factual contentions regarding petitioner's mental capacity at the time that he executed the stipulation and whether respondent knew, or should have known, of his disability. It was, consequently, error for the court to render a decision simply on papers and in the absence of a hearing to explore the disputed questions of fact. Concur—Sullivan, J. P., Carro, Milonas and Smith, JJ.